RITA FRANCES KALINOWSKI, an Infant, by JOHN KALINOWSKI, Her Guardian ad Litem, Respondent, *v.* JOSEPH T. RYERSON & SON, INC., and Another, Appellants, Impleaded with TRUCK EQUIPMENT CO., INC., Defendant.

JOHN KALINOWSKI, Respondent, *v.* JOSEPH T. RYERSON & SON, INC., and Another, Appellants, Impleaded with TRUCK EQUIPMENT CO., INC., Defendant.

Fourth Department, June 27, 1934.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Thomas R. Wheeler, Lyman M. Bass* and *Ernest J. Brown* of counsel] for the appellant Joseph T. Ryerson & Son, Inc.

*Love & Keating* [*George P. Keating* and *Seward H. Millener* of counsel], for the appellant Rock Asphalt & Construction Co., Inc.

*William J. Brock* [*Philip Halpern* of counsel], for the respondents.

LEWIS, J. Our inquiry upon these appeals is directed to the proximate cause of personal injuries sustained by the infant plaintiff. Is the proof sufficient to establish the liability of each of the two defendants who are appellants before us?

In July, 1930, the defendant, appellant, Rock Asphalt & Construction Co., Inc., purchased a new four-wheel motor dump truck with a rated capacity of one and one-half tons. To increase its usefulness the owner commissioned the defendant Truck Equipment Co., Inc., to enlarge the truck body and install an additional rear axle and two additional rear wheels. The steel from which the new rear axle was made was supplied to the defendant Truck Equipment Co., Inc., by the defendant, appellant, Joseph T. Ryerson & Son, Inc. Upon completion of the alterations the truck was immediately put into service, and thereafter for a period of one year it was used in and about the city of Buffalo for hauling asphalt, paving stones, broken concrete, and the usual heavy paving materials and tools.

On July 3, 1931, while the truck was proceeding along Seneca street in the city of Buffalo, at a speed not exceeding twenty-five miles an hour, one of the additional rear wheels parted from the truck, due to a break in its axle, and rolled one hundred and fifty feet up over the curbing to a point on the sidewalk where it struck and injured the infant plaintiff.

At the close of the evidence upon the trial a motion for a nonsuit and dismissal of the complaint as to the defendant Truck Equipment Co., Inc., was granted. No appeal has been taken from that order. Thereafter the jury awarded verdicts for the plaintiffs against both defendants, Rock Asphalt & Construction Co., Inc., the owner of the truck, and Joseph T. Ryerson & Son, Inc., the purveyor of the steel from which the axle was made.

The theory of the plaintiffs' actions was that the break of the truck axle was the result of a combination of an inherent defect in the steel furnished by the defendant Joseph T. Ryerson & Son, Inc., and the overloading of the truck in the service of the defendant Rock Asphalt & Construction Co., Inc.

Upon the record of proof before us, we reach the conclusion that a question of fact was presented as to the legal liability of the defendant, appellant, Rock Asphalt & Construction Co., Inc., and that the verdict against that defendant is in accord with the weight of evidence. However, we do not find evidence of a causal connection between the injury to the infant plaintiff and the alleged inferior quality of the steel furnished to the defendant Truck Equipment Co., Inc., by the defendant, appellant, Joseph T. Ryerson & Son, Inc.

The theory of plaintiffs' case against the defendant Joseph T. Ryerson & Son, Inc., was that, upon order from the defendant Truck Equipment Co., Inc., the Ryerson Company furnished a bar of steel with knowledge that it would ultimately be machined into a motor truck axle. There was proof by the plaintiffs tending to establish that the steel so furnished contained a quantity of non-metallic inclusions which was in excess of that commonly found in steel to be used for motor truck axles. These so-called non-metallic inclusions are microscopic in size and include silicates, oxides and sulphides. They are said to be present to some extent in all steel of ordinary commercial quality. The plaintiffs claim the effect of the presence of non-metallic inclusions is to cause discontinuity in the metal, with resulting weakness which varies with the quantity, size and distribution of such inclusions. They also contend that the defendant Ryerson Company knew, or should have known, of the presence of an unusual quantity of non-metallic inclusions in the steel bar which it furnished and that the alleged inferior quality of the steel was one of the substantial, contributing causes of the break.

It is not disputed that the fracture of the additional axle was of the type known in metallurgy as a "fatigue break," the characteristic feature of which is that the fracture is not sudden but gradual, starting with a fine, surface check and progressing for a period of time, under repeated stress, until the complete break occurs. Of the two metallurgists called as experts by the plaintiffs, one was unwilling to testify that the presence of the non-metallic inclusions in the steel caused the axle to break. Upon that subject he would go no further than the statement " that these non-metallic inclusions *may* have had a bearing on this type of fractures in this steel." The other expert called by plaintiffs likewise repeatedly testified that the presence of non-metallic inclusions in the quantity found in the axle *might* have caused the break. True, he stated his opinion to be that " the axle broke due to the improper material used and the loading service it was subjected to." But a possibility of causation will not suffice to impress liability upon a defendant. Conjecture is not enough. " A cause of action must be something more than a guess." (*Digelormo* v. *Weil*, 260 N. Y. 192, 199.) The applicable rule was clearly stated in *White* v. *Lehigh Valley R. R. Co.* (220 N. Y. 131, 135): " It was not sufficient for the plaintiff to show that a defect might have caused the fall and death, if the circumstances indicate an equal probability that they were due to some other cause. The plaintiff was bound to make out her case by the preponderance of evidence. The jury must not be left to mere conjecture, and a bare possibility that the fall was

caused in consequence of the negligence of the defendant is not sufficient. When the precise cause of an accident is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then the plaintiff is not entitled to recover, and the evidence should not be submitted to the jury." (*Searles* v. *Manhattan Railway Co.* 101 N. Y. 661; *Karr* v. *Inecto, Inc.*, 247 id. 360; *Digelormo* v. *Weil*, 260 id. 192; *Francey* v. *Rutland Railroad Co.*, 222 id. 482; *Ruback* v. *McCleary, Wallin & Crouse*, 220 id. 188; *Paul* v. *Consolidated Fireworks Co.*, 212 id. 117; *Lopez* v. *Campbell*, 163 id. 340.)

Guided by that rule and mindful of the opinion expressed by one of plaintiffs' experts that the axle broke by reason of improper material used therein and the loading service to which it was subjected, we have searched the record in vain for evidence of that quality which would have justified the submission of the case to the jury upon the liability of the defendant Joseph T. Ryerson & Son, Inc.

There is positive proof that during the year of its service, after the installation of the rear axle and prior to the accident, the truck had been repeatedly overloaded by the defendant Rock Asphalt & Construction Co., Inc. The alterations by the defendant Truck Equipment Co., Inc., had increased the capacity of the truck from one and one-half tons to a maximum of four tons. However, despite warning by officials of the Truck Equipment Co., Inc., of the dangers attending such a practice, the truck was subjected to loads of six tons and more. This positive proof of overloading, after warning of the dangers involved, is in marked contrast to the lack of positive proof that the axle broke by reason of the alleged inferior quality of the steel from which it was made.

The record is silent as to knowledge by the Ryerson Company of the type of truck into which this steel was to be built or of the service stress to which it would be subjected. In that connection we note the undisputed proof that the steel from which the axle was fashioned was one of ten bars delivered upon the order of defendant Truck Equipment Co., Inc., February 10, 1930, more than four months prior to the receipt by the last-named company of the order from the defendant Rock Asphalt & Construction Co., Inc., calling for alterations to its newly-purchased truck.

Likewise it is not disputed that the steel furnished by the defendant Ryerson Company was of the quality represented by it and ordered by the Truck Equipment Co., Inc. Plaintiffs do not criticize the tensile strength, the yield point, nor the hardness of the steel. In fact the evidence is clear that in these qualities, which

characterize its strength, it was well above the specifications by which it was sold.

After its delivery to the Truck Equipment Co., Inc., the steel was again subjected to a laboratory test and was found not wanting in its essential qualities. As bearing upon the strength of the steel there is significance in the testimony of one of plaintiffs' metallurgic experts that the fatigue break appeared to have progressed by " steps " and that, for an unknown period of the truck's use, the fracture had involved eighty-five per cent of a cross section of the axle, thereby requiring the remaining fifteen per cent to bear the entire service stress imposed upon that member.

Upon the record before us we rule that the plaintiffs failed to establish the infant plaintiff's injuries were caused in whole or in part by failure of defendant Joseph T. Ryerson & Son, Inc., to perform that legal duty which it owed when it delivered steel to the defendant Truck Equipment Co., Inc., on or about February 10, 1930.

It follows that the judgments and orders from which Joseph T. Ryerson & Son, Inc., appeals should be reversed on the law and the complaints against that defendant dismissed. The judgments and orders from which the defendant Rock Asphalt Construction Co., Inc., appeals should be affirmed.

All concur. Present — SEARS, P. J., TAYLOR, THOMPSON, CROSBY and LEWIS, JJ.

In each case: Judgment and order affirmed as to the defendant Rock Asphalt & Construction Co., Inc., with costs, and judgment reversed on the law as to defendant Joseph T. Ryerson & Son, Inc., and complaint dismissed as to such defendant, with costs.